**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**ANDRE LAMONT ANDERSON**                                              **PLAINTIFF**

**v.**                                   **Case. No. 4:21-cv-01064-LPR**

**SMART, TD**
**A/K/A SMART TRANSPORTATION DIVISION**                        **DEFENDANT**

## <u>ORDER</u>

Andre Lamont Anderson brings this suit against his labor union, SMART, TD.  Mr. Anderson alleges that SMART, TD breached its duty of fair representation by failing to grieve a seniority issue with Mr. Anderson's employer.  Pending before the Court is SMART, TD's Motion to Dismiss.[1]  For the reasons stated below, the Motion is GRANTED.

## BACKGROUND[2]

In April of 2011, Mr. Anderson was terminated by Union Pacific (his employer) for an issue unrelated to the case at bar.[3]  In February of 2012, the Federal Railroad Administration reinstated Mr. Anderson.[4]  The present controversy stems from the reinstatement agreement between SMART, TD (on Mr. Anderson's behalf) and Union Pacific.[5]  The agreement provided for Mr. Anderson to "return to full service complete with seniority and vacation rights unimpaired."[6]  However, according to Mr. Anderson, his seniority rights were impaired.[7]  In his

---

[1] Def.'s Mot. to Dismiss (Doc. 29).

[2] All facts in this Background Section are taken from Mr. Anderson's Amended Complaint.  Given that we are at the motion-to-dismiss stage, all facts pled in the operative complaint are taken as true for purposes of this Order.

[3] Ex. A to Pl.'s Am. Compl. (Doc. 27-1).

[4] Pl.'s Am. Compl. (Doc. 27) ¶ 3; Ex. A to Pl.'s Am. Compl. (Doc. 27-1).

[5] Pl.'s Am. Compl. (Doc. 27) ¶ 6.  Mr. Anderson also signed the agreement.  Ex. D to Pl.'s Am. Compl. (Doc. 27-1).

[6] Pl.'s Am. Compl. (Doc. 27) ¶ 6.

[7] *Id.* ¶ 7. Specifically, the Amended Complaint alleges that Mr. Anderson's employer "refus[ed] to respect his seniority with respect to promotion and trips."  *Id.*  The union calculates "Trainman/Switchman" seniority separately from "Fireman/Engineer" seniority.  Ex. C to Pl.'s Am. Compl. (Doc. 27-1) at 2.  When Mr. Anderson was reinstated in

view, approximately fifty junior employees were inappropriately listed ahead of him on the seniority roster.[8]  Believing that his employer violated the reinstatement agreement, Mr. Anderson began contacting SMART, TD to request an investigation into the seniority issue.[9]

According to the Amended Complaint and attached exhibits, Mr. Anderson contacted SMART, TD at least six times over a period of eight years to inquire about the alleged seniority violation.[10]  Mr. Anderson began this effort in June of 2013 by emailing C.A. Nowlin (SMART, TD's General Chairperson at the time) and asking him "to investigate the Engineer Seniority Placement."[11]  Mr. Anderson alleges that Chairperson Nowlin responded to this email in September of 2013; Mr. Anderson says that this response answered some of his questions but did not address the seniority issue directly.[12]  (Neither party has further described this email or disclosed it to the Court.)  Mr. Anderson did not follow up with SMART, TD for over three years.

Mr. Anderson broke his three-year silence on March 1, 2017.  He sent a letter to SMART, TD.[13]  (Neither party has submitted the March 1, 2017 letter to the Court.)  Soon thereafter, Mr.

---

February of 2012, he fell into the Trainman/Switchman category.  *Id.*  Subsequently, on June 3, 2013, Mr. Anderson became a Certified Locomotive Engineer.  Pl.'s Am. Compl. (Doc. 27) ¶ 9.  This promotion transitioned him into the Engineer/Fireman category for seniority purposes.  *See* Ex. C to Pl.'s Am. Compl. (Doc. 27-1) at 2; Ex. E to Pl.'s Am. Compl. (Doc. 27-1).  Seniority rights for engineers and firemen are covered by a 1972 agreement between Union Pacific and SMART, TD.  Pl.'s Am. Compl. (Doc. 27) ¶ 4; Ex. B to Pl.'s Am. Compl. (Doc. 27-1).  That agreement includes a provision whereby firemen who are promoted to engineers out-of-turn will rank below more senior firemen when those senior firemen are promoted to engineers.  Ex. B to Pl.'s Am. Compl. (Doc. 27-1).  Mr. Anderson's argument to SMART, TD seems to have been that this promotion rule, combined with his own reinstatement agreement, meant that some junior employees promoted to engineers ahead of Mr. Anderson should have been subordinate to him on the seniority roster.  *See* Ex. E to Pl.'s Am. Compl. (Doc. 27-1).  SMART, TD's position was that, because Mr. Anderson was not yet a fireman when he was terminated and reinstated, the promotion rule in the 1972 agreement did not apply to him.  *Id.*

[8] *See* Ex. E to Pl.'s Am. Compl. (Doc. 27-1).

[9] Pl.'s Am. Compl. (Doc. 27) ¶ 8.

[10] *Id.* ¶¶ 8, 11, 13, 16, 17; Ex. C to Pl.'s Am. Compl. (Doc. 27-1); Ex. G to Pl.'s Am. Compl. (Doc. 27-1).

[11] Pl.'s Am. Compl. (Doc. 27) ¶ 8.

[12] *Id.* ¶¶ 8, 10.

[13] *Id.* ¶ 11.

Anderson wrote again to Chairperson Nowlin.[14]  Chairperson Nowlin responded on May 22, 2017, to explain why Mr. Anderson's seniority rights were in compliance with the reinstatement agreement.[15]  Chairperson Nowlin further explained that he was unable "to obtain an agreement to place [Mr. Anderson] ahead of 'some 50' people on the engineer roster."[16]  Chairperson Nowlin's letter closed by stating: "Please advise if you have any further information regarding this matter."[17] In the Amended Complaint, Mr. Anderson characterized Chairperson Nowlin's response as "arbitrar[y] and [made] in bad faith . . . ."[18]

Mr. Anderson next wrote to John Previsich, President of SMART, TD, on August 29, 2017.[19]  Mr. Anderson again requested that the union assist him with his seniority issue.[20] Specifically, he "spelled out [his] intention and the results . . . that [he] was seeking, in accordance to the Individual Reinstatement Agreement . . . ."[21]  President Previsich responded on September 13, 2017, informing Mr. Anderson that President Previsich had "no authority to intercede on [Mr. Anderson's] behalf."[22]  The final paragraph of that letter states:

> It is noted that you have addressed this issue to General Chairperson C.A. Nowlin on multiple occasions.  Additionally, you have addressed this issue with the BLET General Chairperson in March 2016.  While you may disagree with the determination made in this regard, it is clear that your contentions have been appropriately addressed.  As such, there is nothing more that can be done in this regard.[23]

---

[14] *Id.*

[15] *Id.* ¶ 12; Ex. E to Pl.'s Am. Compl. (Doc. 27-1).

[16] Ex. E to Pl.'s Am. Compl. (Doc. 27-1).

[17] *Id.*

[18] Pl.'s Am. Compl. (Doc. 27) ¶ 12.

[19] *Id.* ¶ 13.

[20] *Id.*

[21] *Id.*

[22] Ex. F to Pl.'s Am. Compl. (Doc. 27-1).

[23] *Id.*  Plaintiff provided a copy of this letter as an exhibit attached to the Amended Complaint.  He did not indicate the exact date he received the letter.  He did not suggest any significant delay occurred in his receipt of the letter.

In the Amended Complaint, Mr. Anderson characterized the excerpt above as "arbitrary and capricious . . . ."[24]

Mr. Anderson waited another three years before taking further action on the seniority issue. On May 5, 2021, Mr. Anderson emailed Terry Dixon, who succeeded Mr. Nowlin as SMART, TD's General Chairperson.[25]  Chairperson Dixon responded two days later, reiterating that the union could not address Mr. Anderson's concerns.[26]  On May 12, 2021, apparently unaware of Chairperson Dixon's May 7 response, Mr. Anderson sent another email to SMART, TD expressing his dissatisfaction with the union's previous denials of his requests.[27]  The final sentence of Mr. Anderson's May 12 email states, "[t]his is not another request for the Union to contact [Plaintiff's employer] on Mr. Anderson's behalf for Engineer's Seniority Adjustment, so there is no need for another [d]enial of Mr. Anderson's concerns from the Union."[28]  Chairperson Dixon replied the same day, referring Mr. Anderson to Chairperson Dixon's May 7 email and stating that Mr. Anderson's request "remains denied."[29]

---

Unless the letter took forty-three months and three weeks to arrive to Mr. Anderson, he clearly received it well outside the six-month statute of limitations period.  Such a delay is implausible, especially given that Mr. Anderson did not suggest one occurred.  For the sake of simplicity, the Court will treat the date indicated on the letter provided by Mr. Anderson as the date Mr. Anderson received the letter.  For the same reason, the Court will do the same with all other letters in the record.

[24] Pl.'s Am. Compl. (Doc. 27) ¶ 14.

[25] Ex. C to Pl.'s Am. Compl. (Doc. 27-1).

[26] *Id.*

[27] Pl.'s Am. Compl. (Doc 27) ¶ 17; Ex. G to Pl.'s Am. Compl. (Doc 27-1).

[28] Ex. G to Pl.'s Am. Compl. (Doc 27-1).

[29] Ex. H to Pl.'s Am. Compl. (Doc 27-1).

On November 3, 2021, Mr. Anderson filed this lawsuit, alleging that SMART, TD breached its duty of fair representation.[30]  SMART, TD moved to dismiss the suit entirely, arguing that Mr. Anderson's claim is barred by the statute of limitations.[31]

## DISCUSSION

The statute of limitations for an action alleging breach of the duty of fair representation is short and strict.  The period expires six months after the employee knew or should have known of the event giving rise to his claim.[32]  Mr. Anderson's claim—that SMART, TD breached its duty by refusing to grieve an issue with Mr. Anderson's employer—is covered by this statute of limitations.[33]  Even Mr. Anderson concedes that.[34]

Mr. Anderson filed this lawsuit on November 3, 2021.  Therefore, the question is whether Mr. Anderson knew or should have known that SMART, TD had refused to grieve his seniority issue before May 3, 2021.  Mr. Anderson argues that the start date for the statute of limitations period should be May 12, 2021.[35]  He reasons that he could not have known "why the Union was refusing to grieve or otherwise address the seniority issue" until he received and read the "misleading" and "bad faith" accounts in SMART, TD's May 7, 2021 email.[36]  But Mr. Anderson's Amended Complaint makes it clear that he knew SMART, TD had declined to grieve the seniority

---

[30] Pl.'s Compl. (Doc. 1).

[31] Def.'s Mot. to Dismiss (Doc. 29); Def.'s Br. in Supp. of Mot. to Dismiss (Doc. 30).  SMART, TD also argued that Mr. Anderson failed to state a claim upon which relief can be granted.  The Court does not reach this argument.

[32] 29 U.S.C. § 160(b); *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 169–71 (1983); *see also Evans v. Nw. Airlines, Inc.*, 29 F.3d 438, 441 (8th Cir.1983).

[33] *See Scott v. United Auto*, 242 F.3d 837, 839 (8th Cir. 2001).

[34] Pl.'s Br. in Supp. of Resp. to Def.'s Mot. to Dismiss (Doc. 35) at 5.

[35] *Id.*

[36] *Id.* at 3; Pl.'s Am. Compl. (Doc. 27) ¶ 17.  Mr. Anderson also argues the start date should be May 7, 2021—the date indicated on the email he received "on or about May 12, 2021."  Pl.'s Br. in Supp. of Resp. to Def.'s Mot. to Dismiss (Doc. 35) at 3; Pl.'s Am. Compl. (Doc. 27) ¶ 17.  This discrepancy is of no significance because, as discussed below, the Court determines the statute of limitations period began on September 13, 2017.

issue several years before—when he received the May 22, 2017 letter from Chairperson Nowlin. And "[c]ontinued correspondence with the union does not . . . toll the six-month time limit[,] . . . [o]therwise, a plaintiff could indefinitely delay resolution of Labor disputes merely by bombarding his union with tiresome requests . . . ."[37]

In his May 22, 2017 response to Mr. Anderson, Chairperson Nowlin explained how the calculation used for Mr. Anderson's seniority rights was consistent with the reinstatement agreement.[38]  Chairperson Nowlin went on to explain that he "[does] not have a way to obtain an agreement to place [Mr. Anderson] ahead of 'some 50' people on the engineer roster."[39]  This was more than enough to alert Mr. Anderson that SMART, TD had no intention of grieving the seniority issue.  And that would mean the six-month clock started to run on May 22, 2017.

It is true that Chairperson Nowlin's May 22, 2017 letter closed with the following invitation: "Please advise if you have any further information regarding this matter."[40]  Drawing all plausible inferences in Mr. Anderson's favor, one might be able to concoct an argument that this invitation left the door slightly ajar for SMART, TD to eventually honor Mr. Anderson's request.  But even in this scenario, the door slammed shut in September of 2017.

On September 13, 2017, President Previsich wrote the following to Mr. Anderson: "While you may disagree with the determination made in this regard, it is clear that your contentions have been appropriately addressed.  As such, *there is nothing more that can be done in this regard*."[41]  Whatever sliver of hope Mr. Anderson may have held in May of 2017 that SMART, TD would

---

[37] *Sosbe v. Delco Elec. Div. of Gen. Motors Corp.*, 830 F.2d 83, 87 (7th Cir. 1987) (citing *Dozier v. Trans World Airlines, Inc.*, 760 F.2d 849, 852 (7th Cir. 1985)).

[38] Ex. E. to Pl.'s Am. Compl. (Doc 27-1).

[39] *Id.*

[40] *Id.*

[41] Ex. F to Pl.'s Compl. (Doc 27-1) (emphasis added).

eventually grieve his seniority issue, that hope could not have been reasonably sustained after September 13, 2017.[42]   The six-month statute of limitations began to run, at the very latest, on September 13, 2017.   That was over three years before Mr. Anderson filed his lawsuit.   Mr. Anderson's lawsuit is therefore time-barred, and no further amendments to the Complaint will change that.   Defendant's Motion to Dismiss is GRANTED.   This case is DISMISSED with prejudice.[43]

IT IS SO ORDERED this 18th day of July 2022.

_____
LEE P. RUDOFSKY
UNITED STATES DISTRICT JUDGE

---

[42] Mr. Anderson himself acknowledged this reality nearly four years later in his May 12, 2021 email where he stated, "there is no need for *another [d]enial* of Mr. Anderson's concerns from the Union."  Ex. G to Pl.'s Compl. (Doc 27-1) (emphasis added).

[43] *Botten v. Shorma*, 440 F.3d 979, 980–81 (8th Cir. 2006) (affirming a dismissal with prejudice on statute-of-limitations grounds); *see also Bell v. Missouri*, 253 F. App'x 606 (8th Cir. 2007) (modifying a dismissal without prejudice to a dismissal with prejudice because the statute of limitations had expired).